

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES OF AMERICA

v.

SUPPRESSED

No. 22 M 1000

Magistrate Judge Gabriel A. Fuentes

## MEMORANDUM OPINION AND ORDER

This matter presents the question of whether the Court should authorize the government, in a federal criminal investigation that has generated a search warrant application and affidavit but has not resulted in formal criminal charges, to keep the application and affidavit out of the view of the press and public until further order of court, meaning indefinitely or maybe permanently, to protect uncharged persons from harm to their reputational, privacy, or safety interests. The government's position in this matter evolved from a proposed public filing of a redacted version of the search warrant materials to a proposed sealing of those materials in their entirety until further order of court. Government's Modified Supplemental Memorandum ("Gov. Mem."; D.E. 14). Amicus curiae briefs from the Federal Defender Program ("Fed. Defenders' Br."; D.E. 30), the Reporters Committee for Freedom of the Press ("Reporters Cmte. Br."; D.E. 25), and a group of Chicago-based news and public interest organizations including Tribune Publishing Company (publisher of the Chicago Tribune), the Chicago Sun-Times, WBEZ/Chicago Public Media, and the Better Government Association ("Working Reporters' Br."; D.E. 28) have been filed, all arguing against a judicial practice of sealing warrant materials until further order of court (i.e., a form of sealing that could possibly become permanent) in search warrant matters from closed investigations that do not result in charges. This matter calls on the Court to determine whether

the public's common law right of access to judicial records and the First Amendment right of access to such records permit permanent sealing, and how the Court might develop a practical, case-by-case procedure that adequately balances the importance of public access to court records against the privacy, reputational and safety interests of uncharged or innocent persons and child victims or subjects of the investigation.

## BACKGROUND

In December 2022, the government was investigating possible offenses including the sexual exploitation of a child and receipt and possession of child pornography. *See* 18 U.S.C. §§ 2251(a), 2252A(a)(2)(A) and 2252A(a)(5)(B). The government obtained a search warrant after submitting an application and sworn affidavit ("the Application Materials") establishing probable cause to support a government search of a Chicago apartment, a minor expected to be found there, and certain electronic devices expected to be found there. (D.E. 1 (sealed).)[1] At the time the Court granted the search warrant application, the Court also granted the government's motion to seal the Application Materials for 180 days. (D.E. 2 (sealed), D.E. 3 (sealed).) The Application Materials also included a criminal complaint and an attached search warrant issued in another district. (D.E. 1 (sealed).) The Chicago search was executed on December 19, 2022, and the return documenting execution was filed three days later. (D.E. 4 (sealed).) On June 30, 2023, after the apparent conclusion of the investigation, the government moved (D.E. 5 (sealed)) for an order authorizing it to unseal and file publicly a redacted version of the Application Materials, with the unredacted

---

[1] The Court cites to docket entries in the above-captioned matter as (D.E. ___). Sealed entries are so indicated by the term "(sealed)" after the citation. Where the citation does not contain the "(sealed)" designation, that docket entry is not sealed.

version remaining under seal, to protect the identity of "a child victim, an uncharged target, and a cooperating individual in the investigation." Gov. Mem. at 2.

At roughly the same time as the Court was considering the government's motion for leave to file in public a partially redacted set of search warrant materials in this case, the Court became aware that in a separate, unrelated investigation, the name of an uncharged person became public as a result of publicly released search warrant materials from which that person's name had been redacted. In the spring of 2023, the government had concluded an investigation into alleged public corruption and determined that it would not file charges against the target, a local public official; the government sought court authorization to file a redacted set of search warrant materials on the public docket, which the Court approved. *In the Matter of Search of (Suppressed)*, No. 21 M 548 (D.E. 14) (N.D. Ill. May 11, 2023). The day that the search warrant materials were placed on the public docket, the Chicago Tribune published a news story about the investigation and named the public official, despite the redaction of that name from the publicly released warrant application materials. Thereafter, a second, related search warrant was made public in redacted form, and the Chicago Sun-Times published a news story describing in detail the events recounted in the redacted warrant materials, naming the same uncharged target, and noting that the Tribune had published a story earlier that month about the same investigation based on the release of a redacted warrant application. Both stories accurately reported that the official had not been charged with any wrongdoing.

After the Court became aware that the name of an uncharged person found its way into news stories based on public release of search warrant materials from which that name had been redacted, the Court ordered additional briefing from the government. The Court sought the government's views "concerning the practice of courts permanently sealing unredacted versions

3

and allowing the public filing of redacted versions" and concerning the strength of the government's belief that "such redactions adequately protect the identity of uncharged individuals …." 9/7/23 Order (D.E. 16). The government explained that it initially had sought to file publicly a redacted version of the Application Materials in this matter because the government was "mindful that, in this District, certain judges view sealing until further order of court as overbroad and request that, at a minimum, redacted portions of a search warrant be unsealed"; the government also stated that its "preferred" practice in uncharged cases would be to seal the whole of the warrant application materials until further order of court, with no redacted version filed publicly. Gov. Mem. at 3-4, 7. "Unsealing search warrants in such cases, and effectively accusing a person of criminal acts publicly, could have profound effects on the subject's livelihood and reputation, and in certain cases could put them in physical danger." *Id.* at 6-7. The government also pointed out that unlike cases in which the government lodges formal charges, and thus the target is represented by counsel and has a due process right to challenge the charges, uncharged cases leave defendants with "no due process rights" to challenge assertions in an unsealed warrant application or affidavit submitted in support of probable cause for the search. *Id.* at 7. The government further cited U.S. Department of Justice policies against identifying uncharged persons. *Id.*, citing *Justice Manual* § 9-27.760. The government added that according to its informal survey, sealing practices of U.S. attorneys' offices in uncharged cases appear to vary across judicial districts, with some offices routinely obtaining judicial authority to seal warrant materials until further order of court, and some offices routinely seeking to file redacted materials. *Id.* at 4 n.4. Finally, the government said that although it still considered its proposed redactions appropriate in this case, "the most robust mechanism to protect reputational and safety interests" is permanent sealing, or sealing "until further order of court," arguing that in this case, the government's concerns were not only

4

to avoid reputational harm to the uncharged target, but also to address "[r]eal safety concerns …

for the individuals who could be identified based on information in the search warrant materials."

*Id*. at 8-9.

The Court then solicited amicus briefing on the questions of redaction and sealing until

further order of court.  Publicly filed briefs from the aforementioned amici followed, with each of

the amici opposing the government's proposed "preferred" remedy of sealing the Application

Materials until further order of court.  The content of the amicus briefs will be discussed further

below in the Court's analysis of whether sealing search warrant materials until further order of

court, in investigations that did not result in formal charges, is an appropriate remedy in this case.

## DISCUSSION

Search warrant affidavits on file with the Clerk of the Court, in individual "miscellaneous

case" docket numbers opened when the government applies for a search warrant *ex parte*, as the

government did in this case, are judicial records. *See Baltimore Sun Co. v. Goetz*, 886 F.2d 60, 64

(4th Cir. 1989).  Ordinarily, the public, including the working press, which monitors judicial

proceedings and then disseminates information about them to the public, enjoys a qualified right

of access to judicial documents and proceedings from two distinct sources: the common law and

First Amendment rights of access.  The Court will examine these two sources of public and press

access rights as applied to the Application Materials at issue here, while keeping in mind that

"courts have been reluctant to recognize even a qualified public right to access such materials

where, as here, an investigation concludes without indictment."  *Id.*  As qualified rights of access,

these rights allow the Court to seal records where the government appropriately shows cause to do

so. The decision to deny the common law right of access is left to the discretion of the trial court

in light of the facts and circumstances of the particular case, whereas the decision to deny the First

Amendment right of access requires proof of a compelling government interest and must be narrowly tailored to serve that interest. *Id.* at 63-64. In the absence of controlling Seventh Circuit authority on public access to search warrants as judicial records in closed criminal investigations, the Court agrees with other courts that have deemed public access to these materials as not automatic. *See Matter of App. of WP Co., LLC*, 201 F. Supp. 3d 109, 122 (D.D.C. 2016). The Court balances the public interest in access to search warrant materials as judicial records in closed investigations against the due process interests involved in non-disclosure of the identities of implicated persons, *id.,* as well the serious privacy, reputational and safety interests of uncharged persons, witnesses, cooperators and minor victims or subjects in an investigation.

In Part I below, the Court discusses sealing until further order of court under the common law right of access to judicial records. Part II analyzes the same question under the First Amendment right of access. Part III then relates the Court's approach to the proposed redactions in the government's sealing motion in this case and finds that they are insufficient to protect the privacy and safety of at least the child victims. In the end, the Court stops short of finding that blanket sealing of search warrant materials in this case is necessary to protect privacy, reputational or safety interests, reasoning that sealing determinations are best made on a case-by-case basis upon a balancing of the respective interests.

## I.   The Public Enjoys a Common Law Right of Access to Judicial Records, and This Right Weighs Against Blanket Sealing.

Courts have described the common law right of access as "broader, but weaker" than the First Amendment right of access. *WP Co.*, 201 F. Supp. at 119 (citing cases); *see also Grove Fresh Distribs. v. Everfresh Juice Co.*, 24 F.3d 893, 897 (7th Cir. 1994) (describing common law right of access as "more general in its contours" than the First Amendment right of access). The

common law right of access gives courts supervisory authority over their own records and an inherent authority to seal them. *See Nixon v. Warner Commc'ns*, 435 U.S. 589, 598 (1978). The common law right of public access has been extended to search warrant materials, and whether and for how long to seal them lies within the sound discretion of trial courts. *In the Matter of EyeCare Physicians of Am.*, 100 F.3d 514, 517-18 (7th Cir. 1996), citing *Nixon*, 435 U.S. at 599. Courts conduct a two-part inquiry into whether the records or the proceeding at issue are "judicial records" and then determine whether the government interest in sealing outweighs the public's interest in publication. The right is qualified because it is not absolute: Access may not be appropriate if the government establishes that its interests in nondisclosure outweigh the public interest in disclosure. *Times Mirror Co. v. United States*, 873 F.2d 1210, 1218-19 (9th Cir. 1989). In making the determination whether to seal or unseal, judicial officers exercise their discretion "in light of the relevant facts and circumstances in the particular case," and they have "a responsibility to exercise an informed discretion . . . with a sensitive appreciation of the circumstances." *Nixon*, 435 U.S. at 599, 603.

As to the first part of this inquiry, the Application Materials are "judicial records" subject to the common law right of access. *EyeCare Physicians*, 100 F.3d at 518; *Goetz*, 886 F.2d at 63-64; *see also* Reporters Cmte. Br. at 3 n.3 (collecting cases). But as noted above, the common law right of access is qualified, in that "the decision as to access [to judicial records and documents, including the duration of time they may be sealed] is one best left to the sound discretion of the trial court.'" *EyeCare Physicians*, 100 F.3d at 517-18, quoting *Nixon*, 435 U.S. at 599 and *Goetz*, 886 F.2d at 65 (alterations in *EyeCare Physicians*). To determine whether a record should be disclosed, the court must "balance the government's interest in keeping the document secret against the public's interest in disclosure." *Wash. Legal Found. v. U.S. Sentencing Comm'n*, 89

7

F.3d 897, 902 (D.C. Cir. 1996). To conduct that balancing inquiry, the Seventh Circuit directs courts to consider several consequences of unsealing: "the likelihood that the secrecy of grand jury proceedings would be violated"; the risk that the identities of unnamed subjects not yet charged would be revealed; the concern for "mistaken notions concerning who might and might not be cooperating with the government or who may be subjects"; the potential for "misunderstandings about the parameters of the government's investigation"; threats to the privacy interests of both "the innocent and the implicated"; and the concern that cooperation of present or potential witnesses could be affected. *EyeCare Physicians*, 100 F.3d at 518.[2]

In its brief, the government included harm to uncharged persons as among a number of competing interests: the need to protect minors and children who could be harmed; the risks to those cooperating with the government; the possible disclosure of sensitive information regarding child exploitation; the revealing of law enforcement's investigative strategy; and the risk that the identities of innocent persons not charged or even involved in the criminal investigation could be revealed, causing embarrassment, censure, or other harm that could affect their livelihoods or reputations, or could cause danger to those who are implicated. Gov. Mem at 7-9.[3]

---

[2] *See also EEOC v. Nat'l Children's Ctr., Inc.,* 98 F.3d 1406, 1409 (D.C. Cir. 1996) (citing *United States v. Hubbard*, 650 F.2d 293, 317-22 (D.C. Cir. 1980)), outlining D.C. Circuit's balancing test: "(1) the need for public access to the documents at issue; (2) the extent of previous public access to the documents; (3) the fact that someone has objected to disclosure, and the identity of that person; (4) the strength of any property and privacy interests asserted; (5) the possibility of prejudice to those opposing disclosure; and (6) the purposes for which the documents were introduced during the judicial proceedings."

[3] The Court also will not underestimate the severity of the potential human consequences of the prospect of being charged or being named publicly in connection with a federal criminal investigation. *See, e.g.*, Larry Green, "Ex-Judge Tied to Chicago Graft Probe Kills Self: Reportedly Was to Be Indicted Within Days," *Los Angeles Times* (June 23, 1987) (https://www.latimes.com/archives/la-xpm-1987-06-23-mn-10191-story.html) ("He is the second person to commit suicide in the massive federal investigation known as Operation Greylord."); Rob Warden & James Tuohy, *Greylord: Justice Chicago Style* 156-60 (G.P. Putman's Sons 1989) (recounting suicide of Greylord witness who received a grand jury subpoena and was told, according to the authors, "[y]ou're on your way down").

The gravity of those potential consequences is magnified when the publicly named individuals, who would be presumed innocent if they were charged, are never charged at all. Individuals implicated in a search warrant affidavit have no ability to challenge the assertions in the affidavit because there is no forum in which to litigate them. *Nixon*, 435 U.S. at 599. The lack of a judicial forum for persons to challenge allegations against them in search warrant application materials in closed investigations raises a due process concern. *WP Co.*, 201 F. Supp. 3d at 122. Uncharged targets of investigations may not have a readily ascertainable means of restoring their reputations to the standing that had existed before publication of criminal allegations against or involving them.[4] "[T]he mere association with alleged criminal activity as the subject or target of a criminal investigation carries a stigma that implicates an individual's reputational interest …. [T]he substance of the allegations of criminal conduct may reveal details about otherwise private activities that significantly impact an individual's privacy interests, particularly when those allegations touch on intimate or otherwise salacious details of private affairs." *WP Co.*, 201 F. Supp. 3d at 122. And in the internet age, search engines and search results can give a permanency to negative information published about a person, and clarifying details such as the absence of formal criminal charges might never fully catch up with or repair the reputational damage. *See* Rodney A. Smolla, 1 Law of Defamation § 1:27.50 (2d ed. Nov. 2023 update) ("One of the transformative changes created by the Internet and contemporary social media is that the reputation of individuals, corporations, and organizations largely 'resides' on the Internet …. [One] can view

---

[4] *See* Joseph P. Fried, "Raymond Donovan, 90, Dies; Labor Secretary Quit Under a Cloud," *The New York Times* (June 5, 2021) (https://www.nytimes.com/2021/06/05/us/raymond-j-donovan-dead.html) (quoting charged but acquitted former U.S. Department of Labor secretary as famously saying, "Which office do I go to to get my reputation back?").

9

and track and permanently document the echo book of comments, posts, tweets, and repetitions of the defamatory story as the falsehood spreads like a virulent virus across digital space.").

The amici have also raised concerns to be considered in this balancing inquiry. These concerns include the public's need for information, the degree to which transparency might serve reputational interests, and the public's particular need for access to criminal proceedings and documents so as to allow transparency to serve as a check on prosecutorial or judicial misconduct. Working Reporters' Br. at 6-7. The amici also argue that the Court should place less weight on a showing that the sensitivity of the offense – such as in child exploitation cases – might justify sealing warrant materials, because "the public has just as legitimate an interest in the administration of justice related to sex offenses as it does in any other crime." Reporters Cmte. Br. at 14. The amici ask the Court to place value on transparency into decisions not to charge individuals, because the importance of public oversight is heightened where "failure to prosecute in light of overwhelming probable cause substantially impugns the integrity of the prosecutorial function." *Id.* at 10, citing *United States v. Hubbard*, 650 F.2d 293, 323 (D.C. Cir. 1980); Working Reporters' Br. at 4-5.

With respect to the Application Materials at issue here and the government's request to seal them permanently, or at least "until further order of court," the Court begins with the fact that the target of the government's investigation was not charged. The amici here urge against the practice of permanent sealing under these circumstances, arguing that closure of an investigation without charging should not categorically justify sealing the warrant materials in their entirety. Reporters Cmte. Br. at 5, citing *United States v. Cohen*, 366 F. Supp. 3d 612, 634 (S.D.N.Y. 2019). In *Cohen*, the district court permitted the government to submit to the court, *ex parte*, a proposed set of redactions so that the Court could review those redactions and then direct the government to

10

file them on the public docket. *Cohen*, 366 F. Supp. 3d at 634. News media organizations sought to have the search warrant applications in that investigation unsealed in full. But despite finding (as this Court has done) that the warrant materials at issue were judicial documents subject to a presumption of access because they were "certainly relevant to the performance of a judicial function," the *Cohen* court still restricted public access by allowing redactions, instead of "wholesale disclosure." *Id*. at 620-23. The outcome in *Cohen* thus supports the amici's view that the Court should not permit permanent sealing of the Application Materials in their entirety. But *Cohen* presented different issues than the case at bar. The target of the search warrant materials in that federal investigation was former presidential personal attorney and eventual government witness Michael Cohen, so the district court's interest balancing had to include the need to maintain the integrity of ongoing law enforcement investigations and to prevent uncharged individuals from coordinating or tailoring their testimony and interactions with the government during the ongoing investigation. *Id.* at 617-18, 621-23. And unlike in this case, Cohen already had been unveiled because he was actually charged with tax evasion and making false statements to financial institutions, justifying disclosure of the parts of the materials that related to that conduct, "as well as Cohen's conduct that did not result in criminal charges." *Id*. at 623-24.

The Court thus does not see *Cohen* as precluding permanent sealing of warrant materials in this case or any case, if upon a case-specific balancing of the relevant interests, the Court were to determine that the due process, privacy, reputational or safety interests in non-disclosure might call for permanent sealing. *Cohen*, therefore, is helpful but not dispositive of the amici's position that the government's expressed preference for full and permanent sealing should be rejected here. *EyeCare Physicians* is similarly helpful but not dispositive here, as in that case, the Seventh Circuit

11

protected the government's ongoing investigation by refusing to allow search warrant document access by the target of that investigation. 100 F.3d at 515, 519.

That takes us to *WP Co.*, in which The Washington Post sought access to sealed search warrant materials from a closed investigation of alleged campaign finance violations in the 2010 District of Columbia mayoral election. 201 F. Supp. 3d at 112. In that investigation, some formal charges and prosecutions resulted, and the government already had been ordered to unseal warrant materials "with limited redactions," but The Post sought sealed materials from "separate investigations into unrelated, uncharged personal conduct." *Id.* at 119. Although the court found that a qualified common law right of public access attached to the material from these closed and unprosecuted investigations, the court found this right was "easily offset" by compelling privacy, reputational, due process and law enforcement interests where the material underlying these "ancillary" investigations had never been unsealed, and the district court thus declined to order *any* further unsealing. *Id.* at 112-13, 128-29. Accordingly, the Court reads *WP Co.* as authorizing the continued sealing, in some circumstances, of search warrant materials from closed investigations in which no one was charged. The Court must note, though, that the case-specific facts in *WP Co.* included highly personal and intimate details concerning one of the individuals. *See id.* at 126 ("the Post itself asserts that the materials remaining under seal likely would address intimate personal details regarding [the individual's] sexual preferences and partners"). Accordingly, the Court finds *WP Co.*'s support for wholesale sealing less persuasive in cases in which such highly personal details of an individual's life are not front and center, although the details in the instant case are also highly sensitive, involving a need to protect the identity and safety of child victims. *WP Co.* is no more dispositive on the question of permanent sealing than is *Cohen* for the proposition that courts should never permanently seal.

A word is in order at this point about grand jury secrecy. The Court agrees with the amici's view that "the existence of the overlap [between matters occurring before the grand jury and the content of search warrant materials as judicial records] is insufficient to trigger a reflexive sealing of warrant materials tantamount to permanent sealing," particularly where the material considered for disclosure does not elucidate the grand jury's inner workings. *See* Fed. Defenders' Br. at 1-3; Working Reporters' Br. at 10-11, citing *In re Application of Los Angeles Times Commc'ns LLC to Unseal Court Records*, 628 F. Supp. 3d 55, 62 (D.D.C. 2022). Warrant materials that contain the very core of a "matter occurring before the grand jury," such as an investigation into some untoward behavior by targets or subjects of investigation who were never charged, may be withheld from public knowledge through the balancing of interests under the common law right of public access to judicial records, as well as the First Amendment right of access to those materials, rather than through a reflexive expansion of Rule 6(e) to impose categorical secrecy on warrant materials in spite of their being judicial records. The Seventh Circuit in *EyeCare Physicians* mentioned grand jury secrecy as at least a part of the balancing calculus, 100 F.3d at 518, and so it should be. But overlap, or even substantial overlap, of warrant materials with grand jury proceedings does not alone justify blanket secrecy of those warrant materials so long as they do not reveal the grand jury's inner workings, as the Application Materials in this case do not.

Courts may encounter a number of other facts and circumstances that bear on the case-by-case, individualized analysis necessary to the determination of whether the common law right of access or the First Amendment right of access apply to search warrant materials as judicial records. A blanket order ruling that sealing search warrants in full and indefinitely is always or never appropriate in matters where the government has declined to pursue charges, would render meaningless the type of interest balancing needed to determine if the qualified rights of access do

or do not apply.  In this case, the Court cannot conclude that the Application Materials must be sealed in full and for an indefinite or open-ended period of time.  The investigation involves the repulsive subject of child exploitation, and the involvement of the target and/or others with child exploitation.  The investigation is not ongoing, but its conclusion without charges is a matter of public concern and interest.  Yet court action that could lead to public disclosure of the identities of the uncharged target, or of any cooperating individuals or child victims or subjects, would do untold damage to the reputations of those persons, and great harm to victims, whose identities have not previously been disclosed.  *See In re Application of Los Angeles Times Commc'ns LLC to Unseal Court Records*, 28 F.4th 292, 297 (9th Cir. 2022) (considering prior public disclosure of certain information in the warrant materials as part of the analysis of whether the common law right of access to the materials called for their disclosure).  Accordingly, despite legitimate concerns about redaction and its sufficiency in protecting the privacy and safety interests of the uncharged person, cooperating witness, and child victims or subjects, the Court determines that the common law right of access applies to the Application Materials as judicial records and that they may be disclosed at least in part, but only upon a careful balancing of the interests set forth above. *See Cohen*, 366 F. Supp. 3d at 634.

**II.      The Public Enjoys a First Amendment Right of Access to Judicial Records, and the Blanket Sealing of Warrant Materials "Until Further Order of Court" Would Intrude Upon That Right.**

The Court so far has discussed the considerations weighing against blanket sealing in the context of the common law right of public access to judicial records.  That right overlaps with the First Amendment right of access, which the Court sees as calling for the same conclusion.

The public enjoys a qualified First Amendment right of access to criminal proceedings and documents.  *Press-Enter. Co. v. Superior Court*, 478 U.S. 1, 7 (1986) ("*Press-Enterprise II*").  The

14

government may overcome the First Amendment's presumption of access only upon demonstration that suppression is "essential to preserve higher values and is narrowly tailored to serve that interest." *Grove Fresh*, 24 F.3d at 897. To make that determination, courts use the "experience and logic" test, asking first, whether the type of document at issue has traditionally been open and available to the public; and second, whether public access to the document would serve as a curb on prosecutorial or judicial misconduct or would otherwise further the public interest in understanding the criminal justice system. *Press-Enterprise II*, 478 U.S. at 8-9. To seal a document, the government must show that there is a compelling government interest in sealing, and the court must then narrowly tailor its remedy to that interest. *Goetz*, 886 F.2d at 64.

The First Amendment right of access does not automatically attach to search warrant materials in closed criminal investigations. *WP Co.*, 201 F. Supp. 3d at 122, citing *United States v. All Funds on Deposit at Wells Fargo Bank in San Francisco, Cal., in Acct. No. 7986104185, Held in the Name of Acct. Servs. Inc., & All Prop. Traceable Thereto* (*"Wells Fargo"*), 643 F. Supp. 2d 577, 583 (S.D.N.Y. 2009). The Court must first determine the "experience" prong of the First Amendment right of access test, namely whether "the public would historically have had a right of access" to the type of proceedings or to the type of materials integral to them. *Wells Fargo*, 643 F. Supp. 2d at 582-83. If the "experience" prong is satisfied, the court then determines whether "public access . . . plays a particularly significant positive role in the actual functioning of the process," the so-called "logic" prong. *Press-Enterprise II,* 478 U.S. at 11. If so, the presumption of public access can be overridden upon a showing by the government that (1) sealing serves a compelling interest; (2) there is a substantial probability that, in the absence of closure, this compelling interest would be harmed; and (3) there are no alternatives to sealing that would adequately protect the compelling interest. *Id*. at 13-14.

Here, the only judicial proceeding that has occurred in the case is the application for the warrant itself, and such proceedings are historically "highly secret in nature" and have been closed to the press and public. *Id.* And while the Seventh Circuit has yet to address whether the First Amendment right of access attaches to materials related to search warrants, other circuits that have done so have held that search warrant proceedings have historically been conducted out of the public arena. *United States v. Suppressed*, No. 16 MC 261, 2019 WL 1077148, at *2 (N.D. Ill. Mar. 7, 2019), citing *In re Matter of the Search of Fair Finance*, 692 F.3d 424, 472 (6th Cir. 2012); *Baltimore Sun Co. v. Goetz*, 886 F.2d 60, 62 (4th Cir. 1989); *Times Mirror Co. v. United States*, 873 F.2d 1210, 1214, 1216 (9th Cir. 1989). *But see In re Search Warrant for Secretarial Area Outside Office of Gunn*, 855 F.2d 569, 573 (8th Cir. 1988) (concluding that First Amendment right of access applies to search warrant materials).

As for the logic test, public access to search warrant materials generally may or may not play a positive role in the actual functioning of the process. *Press-Enterprise II,* 478 U.S. at 11. The analysis depends on particular case facts, and here, the Court doubts that transparency into the details of this particular warrant would shed much light on the functioning of criminal investigations or judicial oversight of them. Nonetheless, the Court will assume without deciding that the Application Materials are subject to the First Amendment presumption of public access, insofar as the process subjects proposed redacted documents to judicial review to ensure the protection of privacy, reputational, and safety interests when search warrant application materials are proposed for unsealing. The logic prong of the First Amendment right of access test favors access to warrant materials because "the right of access promotes the trustworthiness of the judicial process, curbs judicial abuses, and provides the public with a better understanding of the judicial process, including its fairness." *United States v. Sealed Search Warrants*, 868 F.3d 385, 395 (5th

16

Cir. 2017).  Indeed, it is an important aim for the public to understand whether search warrants or investigations were undertaken improperly, or whether instead "the government had the evidence but nevertheless pulled its punches" in deciding to decline charges in a case.  *Citizens for Resp. & Ethics in Wash. v. Dep't of Justice*, 746 F.3d 1082, 1093 (D.C. Cir. 2014); *see Hubbard*, 650 F.2d at 323; Reporters Cmte. Br. at 17.

But like the common law right of access, the First Amendment right is qualified and not absolute.  *Press-Enterprise II,* 478 U.S. at 9.  And for the reasons stated above, the interests in non-disclosure of these forms of potentially damaging information in uncharged cases may be compelling.  As the Court discusses further below in Part III, judges must make the complex determination that certain information ought to stay out of the public domain in a manner consistent with the jurisprudence regarding the First Amendment right of access.  For the same reasons noted in this Court's analysis of the common law right of access above in Part I, the Court also applies the First Amendment right of access by declining to endorse the wholesale, indefinite sealing of the entirety of the Application Materials.  Instead, the Court will undertake an individualized analysis of whether the proposed redactions are or are not sufficient to protect the privacy, reputational, and safety concerns that might make the interest in non-disclosure compelling, and of whether the proposed redactions are narrowly tailored to balance the competing interests. *See Press-Enterprise II*, 478 U.S. at 13-14, citing *Press-Enterprise Co. v. Superior Court*, 464 U.S. 501, 510 (1984) ("*Press-Enterprise I*").

The Court's decision today leaves open the possibility that there could be cases where permanent sealing is warranted, but this is not such a case. Taking into account the compelling nature of the interest in the protection of the privacy, reputation, and safety of innocent persons, uncharged persons, witnesses, cooperators and minor victims and subjects, the Court here opts for

court-ordered redaction and the public filing of the redacted Application Materials after the Court's careful review of the redactions with all of the competing interests in mind.

### III. The Court Denies the Government's Specific Redaction Requests in This Matter.

Nonetheless, the Court's balancing of the interests in this case leads to the conclusion that the level of redaction proposed by the government is insufficient. The government submitted, with its initial motion (D.E. 5, sealed), a set of proposed redactions. Given the strength of the reputational, privacy, and safety interests involved in the possible disclosure to the public of the identities of uncharged persons or cooperating individuals, or (as in this case) minors who were victims of an offense or who were swept up somehow in the offense conduct, the Court must exercise the utmost care to ensure that the redactions are sufficient to prevent disclosure of details that would allow the media to learn the identities of individuals or entities that should remain properly under seal. This task will be a challenge for courts generally, but insofar as the Court finds today that routinely sealing until further order of court the entirety of warrant materials is inappropriate under the common law and First Amendment rights of public access, judges must embrace the challenge of complexity[5] presented in circumstances like these.

Undertaking that challenge by reviewing the government's proposed redactions here, the Court finds them insufficient to protect the identities, and thus the privacy and safety, of at least the child victim and possibly other victims because the unredacted portion of the proposed public filing discloses the name of a person who *was* charged publicly with child pornography offenses and the federal district in which those charges were lodged, as well as a summary stating that the person charged in the other district was "working with" a minor to "convince other, younger female

---

[5] *See* Richard A. Posner, *Reflections on Judging* 92 (Harvard 2013).

children" to create sexually explicit material. The remainder of the allegations concerning the minors, the uncharged target and the cooperating witness appear to be redacted completely – and appropriately. But the Court's review of the redactions, in applying the type of careful approach that ought to be applied in each of these cases, did not leave the Court with sufficient confidence that the proposed redactions would sufficiently protect the identities of at least the minor victims or subjects. By not redacting the name of the publicly charged individual and the charging district, the proposed redactions could lead persons who might read or learn of the Application Materials to draw inferences based on connections between the named person and minors known to have associated with that person, and those inferences could be enough for third parties to connect the dots and thus discern the identities of one or more minors involved in the offenses. The fact that unrelated public charges were leveled against the individual named in the Application Materials does not require that this person's name be disclosed in the unsealing of search warrant materials in a sensitive federal criminal investigation that is an entirely separate proceeding that did not result in charges. Insufficient redaction of the Application Materials might also put at risk the privacy, reputation and safety of the uncharged investigation target and the cooperating witness, but the Court's concern for the minor victims or subjects in this investigation is enough to support the conclusion that more redaction is needed in this case. Finally, the Court finds that redaction of the name of the publicly charged individual in this case, and of the district in which that person was charged, is narrowly tailored to balance the competing interests in transparency and public disclosure of judicial documents and proceedings.

19

## CONCLUSION

For the foregoing reasons, the Court denies the government's motion (D.E. 5, sealed) for leave to file its partially redacted Application Materials and denies the government's alternative request (D.E. 14) to seal the Application Materials indefinitely or "until further order of court." The government is ordered to submit its revised proposed redactions in a renewed motion by noon on July 12, 2024.

**SO ORDERED.**

ENTER:

**GABRIEL A. FUENTES**
**U.S. Magistrate Judge**

**Dated: July 1, 2024**